IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KIA LEE LUTHER,                                      No. 3:15-cv-01376-HZ

        Plaintiff,

   v.

CAROLYN W. COLVIN, Acting                 OPINION & ORDER
Commissioner of Social Security,

        Defendant.


George J. Wall
1336 E. Burnside Street, Suite 130
Portland, Oregon 97214

      Attorney for Plaintiff

Billy J. Williams
UNITED STATES ATTORNEY
District of Oregon
Janice E. Hebert
ASSISTANT UNITED STATES ATTORNEY
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204-2902


1 - OPINION & ORDER

Courtney Garcia
SPECIAL ASSISTANT UNITED STATES ATTORNEY
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington 98104-7075

     Attorneys for Defendant

HERNANDEZ, District Judge:

     Plaintiff Kia Lee Luther brings this action seeking judicial review of the Commissioner's final decision to deny supplemental security income (SSI).  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1383(c)(3)).  I affirm the Commissioner's decision.

## PROCEDURAL BACKGROUND

     Plaintiff applied for SSI on December 15, 2011, alleging an onset date of May 1, 2003. Tr. 204-09.  Her application was denied initially and on reconsideration.  Tr. 71-87, 115-18 (initial); Tr. 88-104, 122-23 (reconsideration).  On January 13, 2014, Plaintiff appeared, with counsel, for a hearing before an Administrative Law Judge (ALJ).  Tr. 34-66.  On February 18, 2014, the ALJ found Plaintiff not disabled.  Tr. 13-33.  The Appeals Council denied review.  Tr. 1-4.

## FACTUAL BACKGROUND

     Plaintiff alleges disability based on having bursitis, bipolar disorder, depression, anxiety, and migraines.  Tr. 272.  At the time of the hearing, she was thirty-four years old.  Tr. 40.  She has a high school diploma and has past relevant work experience as a kitchen worker/dishwasher and as a line sorter/conveyor belt sorter.  Tr. 40, 56.

2 - OPINION & ORDER

SEQUENTIAL DISABILITY EVALUATION

A claimant is disabled if unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(3)(a).

Disability claims are evaluated according to a five-step procedure. See Valentine v. Comm'r, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step procedure to determine disability). The claimant bears the ultimate burden of proving disability. Id.

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

In step three, the Commissioner determines whether plaintiff's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. Yuckert, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity (RFC) to perform "past relevant work." 20

3 - OPINION & ORDER

C.F.R. §§ 404.1520(e), 416.920(e).  If the claimant can, the claimant is not disabled.  If the

claimant cannot perform past relevant work, the burden shifts to the Commissioner.  In step five,

the Commissioner must establish that the claimant can perform other work.  Yuckert, 482 U.S. at

141-42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f).  If the Commissioner meets his burden

and proves that the claimant is able to perform other work which exists in the national economy,

the claimant is not disabled.  20 C.F.R. §§ 404.1566, 416.966.

THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful

activity since her date of application.  Tr. 18.[1]  Next, at step two, the ALJ determined that

Plaintiff has severe impairments of obesity, lumbar degenerative disc disease, organic mental

disorder (borderline intellectual functioning versus cognitive disorder versus attention deficit

hyperactivity disorder), affective disorder (depression versus bipolar disorder versus dysthymic

disorder), anxiety, borderline personality disorder, and drug and alcohol abuse.  Id.  Nonetheless,

at step three the ALJ determined that Plaintiff's impairments did not meet or equal, either singly

or in combination, a listed impairment.  Tr. 19-20.

At step four, the ALJ concluded that Plaintiff has the RFC to:

> perform light work as defined in 20 CFR 416.967(b) with additional non-
> exertional limitations.  She can occasionally balance, stoop, kneel, and crouch
> with no crawling or climbing (e.g. ramps, stairs, ladders, ropes, scaffolds).  She
> needs to avoid concentrated exposure to vibration, pulmonary irritants (e.g.,
> fumes, odors, dusts, gases, poor ventilation), and hazards such as working around

---

[1]  SSI benefits under Title XVI of the Social Security Act are not payable before the date
of application.  20 C.F.R. § 416.335.  The relevant time period for such claims begins with the
application date.  See Due v. Comm'r, No. 6:15-cv-00049-JO, 2016 WL 1573833, at *1 (D. Or.
Apr. 19, 2016) ("The relevant period for his Title XVI claim runs from the protective filing date
of his application in June 2010 through the date of the ALJ's decision").

moving machinery or heights.  She can perform simple, routine tasks and follow short, simple instructions.  She can perform work needing little or no judgment and can perform simple duties that can be learned on the job in a short period. She will have average ability to perform sustained work activities (i.e., can maintain attention and concentration, persistence, and pace) in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule) within customary tolerances of employers['] rules regarding sick leave and absence.  She needs a work environment with minimal supervisor contact (minimal contact does not preclude all contact, rather it means contact does not occur regularly.  Minimal contact also does not preclude simple and superficial exchanges and it does not preclude being in proximity to the supervisor). She can work in proximity to a few co-workers but not in a cooperative or team effort.  She needs a work environment that has no more than minimal interactions with a few co-workers.  She needs a predictable work environment with few work setting changes.  She needs a work environment without public contact.

Tr. 20.  With this RFC, the ALJ determined that Plaintiff is unable to perform any of her past

relevant work.  Tr. 26.  However, at step five, the ALJ determined that Plaintiff is able to perform

jobs that exist in significant numbers in the economy such as pricer-tagger, laundry sorter, and

small parts assembler.  Tr. 27.  Thus, the ALJ determined that Plaintiff is not disabled..  Tr. 28.

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the

Commissioner's findings are based on legal error or are not supported by substantial evidence in

the record as a whole.  Vasquez v. Astrue, 572 F.3d 586, 591 (9th Cir. 2009).  "Substantial

evidence means more than a mere scintilla but less than a preponderance; it is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion."  Id. (internal

quotation marks omitted).  The court considers the record as a whole, including both the

evidence that supports and detracts from the Commissioner's decision.  Id.; Lingenfelter v.

Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007).  "Where the evidence is susceptible to more than

5 - OPINION & ORDER

one rational interpretation, the ALJ's decision must be affirmed." Vasquez, 572 F.3d at 591

(internal quotation marks and brackets omitted); see also Massachi v. Astrue, 486 F.3d 1149,

1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the

court] may not substitute [its] judgment for the ALJ's") (internal quotation marks omitted).

DISCUSSION

Plaintiff argues that the ALJ erred by improperly rejecting the opinion of examining

psychologist Keli Dean, Psy.D., and by failing to find Plaintiff's chronic headaches a severe

impairment at step two.

I.  Step Two

The ALJ considers the severity of the claimant's impairment(s) at step two.  20 C.F.R. §

416.920(a)(4)(ii).  A severe impairment is one that significantly limits the claimant's physical or

mental ability to do basic work activities.  20 C.F.R. § 416.920(c).  "Basic work activities" are

the abilities and aptitudes necessary to do most jobs, including physical functions such as

walking, standing, sitting, and lifting, and mental functions such as understanding, carrying out,

and remembering simple instructions.   20 C.F.R. § 416.921(b).  In Social Security Ruling (SSR)

85-28 (available at 1985 WL 56856, at *3), the Commissioner has explained that "an impairment

is not severe if it has no more than a minimal effect on an individual's physical or mental

ability(ies) to do basic work activities[;]" see also SSR 96-3p (available at 1996 WL 374181, at

*1) ("an impairment(s) that is 'not severe' must be a slight abnormality (or a combination of slight

abnormalities) that has no more than a minimal effect on the ability to do basic work activities.").

In concluding that Plaintiff's headaches are not a severe impairment, the ALJ explained

that the headaches, along with several other alleged impairments, appeared in the records "from

time to time," but they were "mild or transient conditions[,] were of short duration, controllable, and without significant effect on the claimant's ability to perform work activities."  Tr. 19.

    Plaintiff argues that the record does not support the ALJ's finding.  She cites to three medical records from 2009 and two from 2010 showing that she received treatment for migraine headaches.  In April 2009, she received Vicodin for a migraine headache.  Tr. 778-79.  The next month, neurologist Dr. H. Leonard, M.D. indicated that she suffered from chronic daily headaches with "suggestion of atypical migraine."  Tr. 692.  In December 2009, Plaintiff was prescribed Depakote for her bipolar disorder and to prevent headaches.  Tr. 747.  In February 2010, she reported a migraine headache, but could not recall the last time she experienced one.  Tr. 714.  She thought it might have been two months earlier.  Id.  She was taking Depakote and Propranolol.  Id.  She received a prescription for Vicodin.  Id.  In May 2010, she reported another migraine.  Tr. 1530.  At the hearing, Plaintiff testified that she was taking gabapentin/Neurontin for her headaches.  Tr. 51.  She stated that she experiences headaches at least once per week and that they last anywhere from a few hours to a few days.  Id.  When she has one, she has to lie down in a dark room.  Id.  She vomits occasionally.  Id.

    Other evidence in the record indicates that medication has been helpful in controlling her headaches or that Plaintiff's headaches were attributable to non-migraine causes.  E.g., Tr. 690 (Nov. 29, 2010 chart note stating that gabapentin/Neurontin provided "notable help" to headache frequency; further noting that cause of headache may not be migraine but congestion); Tr. 1484-85 (during a Sept. 25, 2010 emergency room visit Plaintiff complained of headache or "migraine" but doctor attributed pain to rotten tooth).

    Plaintiff alleges disability beginning in May 2003.  The record contains over 1,300 pages

7 - OPINION & ORDER

of medical records.  Tr. 330-1676.  Yet Plaintiff cites to only five chart entries to argue that her

headaches were a severe impairment.  The records she cites are limited to a period in 2009-10,

before the relevant adjudicatory period beginning December 15, 2011.  Additionally, the ALJ

found Plaintiff's subjective testimony not credible.  She does not challenge that finding in this

appeal.  Absent a challenge to the credibility finding, the ALJ properly gave little weight to her

description of her headaches and their effects on her.  The record supports the ALJ's conclusion

that Plaintiff's headaches produced transient symptoms of short duration and were controlled by

medication.  As a result, they did not significantly impact her ability to perform basic work

activities.  The ALJ did not err in finding her headaches non-severe at step two.

   Alternatively, even if the ALJ did err, the error was harmless.  Where the ALJ fails to list

a medically determinable impairment at step two, but nonetheless considers the limitations posed

by the impairment in the RFC, any error at step two is harmless.  Lewis v. Astrue, 498 F.3d 909,

911 (9th Cir. 2007) (holding that where the ALJ considered evidence of limitations posed by

claimant's bursitis at step four of the disability analysis, any error in failing to consider bursitis

"severe" at step two was harmless); Stout v. Comm'r, 454 F.3d 1050, 1055 (9th Cir. 2006) (ALJ's

failure to explicitly address the claimant's urinary stress incontinence was harmless because the

ALJ incorporated the limitations caused by this impairment into the RFC and it was thus

"irrelevant to the ALJ's ultimate disability conclusion.").

   Here, the ALJ took Plaintiff's pain symptoms into consideration in the RFC by limiting

her to light work with several postural limitations.  He also limited her exposure to vibration,

irritants, and hazards.  Other than asserting, without citing to the record, that her headaches

"significantly limit her ability to function," Pl.'s Reply 6, Plaintiff points to no specific functional

limitations caused by her headaches.  The only limitations evidence is from her discredited

hearing testimony.  Accordingly, any error by the ALJ is harmless.

II.  Dr. Dean

Between 2006 and 2011, Plaintiff underwent four psychological evaluations at the request

of the Department of Human Services (DHS).  Tr. 558-97, 627-34.  Three of those were

conducted by psychologist Dr. Keli Dean, Psy.D.  Tr. 558-79, 627-34.  The first, in April 2006,

was an assessment for learning disabilities.  Tr. 558-66.  The second occurred in May 2007 and

the third in December 2011.  Tr. 567-79, 627-34.  Another, conducted by psychologist Jill

Spendal, Psy.D., was in July 2009.  Tr. 580-97.  Plaintiff argues that the ALJ improperly rejected

Dr. Dean's December 1, 2011 opinion.  She does not challenge the ALJ's rejection of Dr. Dean's

previous opinions or Dr. Spendal's opinion, all of which were rendered before the relevant

adjudicatory period.

In the December 1, 2011 evaluation, Dr. Dean personally interviewed Plaintiff,

administered the Personalty Assessment Inventory (PAI), and reviewed her own and Dr.

Spendal's prior evaluations.  Tr. 627.  Dr. Dean wrote an eight-page report, the first several pages

of which chronicle Plaintiff's subjective reporting of symptoms to Dr. Dean.  Tr. 627-30.  As to

mental status exam and testing, Dr. Dean noted that Plaintiff presented as upbeat and personable,

which was consistent with her previous presentations, but which displayed an affect incompatible

with her reported content.  Tr. 630.  She noted Plaintiff's inconsistencies and difficulties

describing her symptoms.  Id.  Plaintiff denied psychotic symptoms, but her insight and judgment

appeared limited.  Tr. 631.

Dr. Dean noted that Plaintiff's psychological testing from 2006, 2007, and 2009 showed

borderline intellectual functioning and significant impairment in her attention function.  Id.  In the current December 1, 2011 evaluation, the PAI administered by Dr. Dean was invalid.  Tr. 631.  Dr. Dean also administered the "Connor's Adult ADHD Rating Scale (CAARS) - Self-Report: Long Version."  Tr. 631-32.  This test was valid and showed problems organizing and completing tasks and trouble concentrating.  Tr. 632.  Plaintiff's "self-report on the CAARS suggests she meets the criteria for ADHD [attention-deficit/hyperactivity disorder] as described by the DSM-IV."  Id.

Based on her interview, the review of previous evaluations, and the CAARS, Dr. Dean diagnosed Plaintiff as having (1) dysthymic disorder; (2) generalized anxiety disorder, provisional; (3) major depression, recurrent, by history; (4) amphetamine dependence with full sustained remission per client report; and (5) rule out ADHD, "combined type."  Id.  In her summary, Dr. Dean noted that Plaintiff was referred for the evaluation to better understand her emotional functioning and her ability to participate in DHS programs as well as for future training and employment.  Id.  Dr. Dean stated that Plaintiff had borderline intellectual functioning based on her 2006 and 2009 testing but there was still a need to "gain diagnostic clarity in the area of anxiety and mood disorders."  Id.  Such clarity was limited, however, by Plaintiff's "limited ability to provide consistent historical information as well as her invalid PAI." Id.

Dr. Dean noted that Plaintiff "seem[ed] to struggle with issues of anxiety, dysphoria and low energy, which negatively impacts her ability to complete tasks of daily living."  Id.  Dr. Dean noted Plaintiff's subjective reports of a long history of depression and poor motivation as well as being overwhelmed by parenting tasks.  Id.  Dr. Dean thought there was a "strong possibility of a

diagnosis of generalized anxiety disorder." Id.

As to the possibility of ADHD, Dr. Dean explained that in 2006 and 2009, Plaintiff was given a diagnosis of cognitive disorder, NOS due to her poor performance on the "IVA,"[2] and her "self-reported problems with attention after she stopped using methamphetamines." Id. ADHD had not been considered in the past as Plaintiff and her mother had both previously denied childhood symptoms of that diagnosis. Id. But, Plaintiff was currently, and now inconsistently, reporting a childhood history of disorganization, inattention, and hyperactivity in early childhood. Id. In previous testing, she performed adequately on time-limited tasks of attention. Id. But, her scores were "significantly impaired" when she was required to sustain attention over time. Id. Her CAARS responses suggested she suffers from symptoms consistent with a diagnosis of ADHD which pointed to a diagnosis of that disorder. Tr. 632-33. But, without access to early school records, Dr. Dean was unable to gain a "true understanding" of Plaintiff's childhood symptoms. Tr. 633. And, Dr. Dean suggested that it was possible that Plaintiff suffered from cognitive problems secondary to her use of methamphetamines. Id.

Next, Dr. Dean noted that in all three previous assessments, mental health treatment had been recommended for Plaintiff but she failed to follow through each time. Id. Dr. Dean nonetheless again recommended that Plaintiff work with a mental health treatment team. Id. She also recommended that substance abuse issues should be ruled out. Id. Dr. Dean noted that if Plaintiff was using more marijuana than she admitted to during the clinical interview, this could negatively affect her mood and motivation. Id.

---

[2] This appears to refer to the previous administration of the "Integrated Visual and Auditory Continuous Performance Test." Tr. 570, 572-73 (2007); Tr. 586, 589-90 (2009).

Dr. Dean opined that Plaintiff's ability to find and participate in employment was "likely quite limited by the combination of her low level of intellectual functioning, mental health symptoms, poor attention, and low level of motivation." Id. She recommended a referral to the Vocational Rehabilitation Department to assist Plaintiff with support and goal setting to work toward employment in the future once she had relief from her mental health symptoms. Id. Dr. Dean also noted that in an employment or training setting, Plaintiff would benefit from increased breaks to alleviate fatigue, time for calls to support providers, and a job coach early in employment. Tr. 634.

Dr. Dean completed a two-page Mental Residual Functional Capacity Report (MRFC). Tr. 635-36.[3] She found Plaintiff to be moderately or not significantly limited in many abilities. Id. However, she found Plaintiff to be markedly limited in the ability to maintain attention and concentration for extended periods. Tr. 636. She indicated, however, that this was based on Plaintiff's previous 2006 and 2009 test scores. Id.

The ALJ rejected Dr. Dean's opinion for the following reasons: (1) there was no rational given for any ratings or limitations given; (2) she did not review any other medical reports, suggesting she relied on Plaintiff's subjective symptom reporting: (3) the limitations assessed were out of proportion to the longitudinal treatment record, which I understand to be stating that the limitations were not supported by objective medical evidence in the record; (4) no function-by-function analysis was provided; (5) the 2006, 2007, and 2009 evaluations were completed before the relevant adjudicatory period; (6) the 2006, 2007, and 2009 evaluations contained

_____

[3] As explained below, I agree with Plaintiff that this MRFC was erroneously dated January 2, 2011, eleven months before the December 1, 2011 evaluation.

recommendations for how Plaintiff could be successful in educational and employment settings and such recommendations are inconsistent with disability and imply Plaintiff can work; and (7) the 2011 evaluation acknowledged that Plaintiff's ongoing use of marijuana could negatively impact her mood and motivation.   Tr.25.

"If a treating or examining doctor's opinion is contradicted by another doctor's opinion,," which Plaintiff concedes is the case here, "an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005).

Plaintiff argues that the ALJ erred because Dr. Dean's opinion is supported by her several-page narrative report, she did in fact review her own prior medical reports, and she completed a function-by-function analysis.  Additionally, Plaintiff argues that the ALJ failed to specifically note what part of the longitudinal treatment record did not support Dr. Dean's limitations.  She also contends that Plaintiff's marijuana use does not support a rejection of Dr. Dean's opinion because Dr. Dean did not opine that stopping marijuana would restore Plaintiff's ability to work and because the record does not indicate that Plaintiff's complex, longstanding psychological impairments are caused by marijuana use.

While I agree with Plaintiff in some respects, I conclude that the ALJ's rejection of Dr. Dean's 2011 opinion was not error.  First, it is apparent from reading the December 1, 2011 report that Dr. Dean relied heavily on Plaintiff's reported subjective symptoms.  For example, in discussing Plaintiff's education and employment, Dr. Dean expressly referred to the fact that Plaintiff previously reported not having had problems with attention in school, but "however, in this interview she said she daydreamed, was distracted easily, didn't listen to her teachers, could

13 - OPINION & ORDER

not concentrate, and fidgeted in her seat." Tr. 628.  "She continues to struggle with maintaining attention as well as having problems with her memory." Id.  The use of the present tense "continues" indicates that this was a current, subjective report to Dr. Dean by Plaintiff.  In another example, Dr. Dean expressly stated that it was Plaintiff's "current reporting of symptoms" that supported a diagnosis of dysthymia as well as anxiety.  Tr. 629.  She expressly relied on statements by Plaintiff to support this conclusion.  Id.  Dr. Dean was obviously familiar with her own previous reports which she reviewed, along with Dr. Spendal's report, to prepare the 2011 report.  Nonetheless, the record supports the ALJ's conclusion that much of Dr. Dean's opinion was based on the subjective symptoms reported by Plaintiff.  An ALJ provides specific and legitimate reasons for rejecting a treating physician's opinion which is based on a non-credible claimant's subjective reports.  Bayliss, 427 F.3d at 1217 (ALJ did not err in rejecting opinions based on subjective complaints); Espenas v. Colvin, No. 3:14-cv-00355-HZ, 2014 WL 7405655, at *7 (D. Or. Dec. 30, 2014) ("A treating physician's opinion may be rejected if it is based on a non-credible claimant's subjective reports") (citing Bayliss, 427 F.3d at 1217; Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir.1995) (a medical opinion which is "premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded, once those complaints have themselves been properly discounted.")).

Next, I agree with Plaintiff that the ALJ erred when he found that Dr. Dean did not provide a function-by-function report.  Defendant is correct that the two-page functional report signed by Dr. Dean bears the date of "1-2-11" which precedes the December 1, 2011 evaluation by eleven months.  But, I agree with Plaintiff that this appears to be an obvious date error.  Based on my review of hundreds of social security administrative records, a functional report such as

14 - OPINION & ORDER

the one completed by Dr. Dean is typically completed by the practitioner contemporaneously

with or shortly following an evaluation. Given that Dr. Dean had not evaluated Plaintiff since

2007, it is highly unlikely that Dr. Dean would have completed the MRFC out of the blue three

and one-half years later. More likely than not, Dr. Dean completed the MRFC on January 2,

2012, and like many of us simply put the previous year of "11" instead of "12" because it was

only the second day of January. This conclusion is supported by the fact that both the December

1, 2011 report and the "1-2-11" MRFC were faxed together on January 20, 2012. Tr. 626-36.

But, the problem for Plaintiff remains that the functional report is supported by Plaintiff's

subjective reports or by objective testing that is out-of-date and not probative of disability after

December 15, 2011, the application date. The only current testing done by Dr. Dean in 2011 was

the invalid PAI and the CAARS. The CAARS resulted in a rule-out ADHD diagnosis. Dr. Dean

noted that individuals with CAARS results similar to Plaintiff's showed a tendency to learn more

slowly, have problems organizing and completing tasks, and have trouble concentrating. Tr. 632.

Plaintiff also "endorsed" items in CAARS testing suggesting she is more impulsive than others,

her moods change quickly, and she is more easily irritated by others. Id. Her responses showed

she had poor self-confidence and impaired social relationships. Id.

Although Dr. Dean's MRFC does not expressly cite the basis for each rated activity, she

did clearly note that for three of them, she was relying on old test scores. Tr. 635-36. Next to the

"ability to understand and remember detailed instructions," the "ability to carry out detailed

instructions," and the "ability to maintain attention and concentration for extended periods," she

put an asterisk which she explained, at the bottom of the second page, meant that these

"[r]esponses [are] based on previous test scores from 06 + 09 cognitive evaluation." Tr. 635-36.

15 - OPINION & ORDER

The only marked limitation assessed by Dr. Dean, and the only one expressly addressed by the vocational expert at the hearing, is not probative of Plaintiff's functioning at the time of her application because it was based on test scores from two and four years earlier.  Presumably, the other limitations without asterisks were based on Plaintiff's subjective information given to Dr. Dean at her evaluation or perhaps based on the CAARS testing.  Even if based on the CAARS testing, however, the record does not support that those limitations establish disability when they were assessed by Dr. Dean as only moderate limitations, not marked ones.

The record shows that Dr. Dean completed a function-by-function report soon after her December 2011 evaluation of Plaintiff and to the extent the ALJ rejected her opinion for failing to assess function-by-function limitations, the ALJ erred.  But, the error is harmless because when the MRFC is considered, it is based on subjective reporting by Plaintiff, out-of-date testing not probative of disability during the relevant time period, or does not establish marked limitations sufficient to support disability.   Thus, while Dr. Dean supported her ratings and limitations with her narrative report, the ALJ's failure to credit it was harmless error.

Finally, the ALJ's suggestion that Dr. Dean's opinion is undermined by Plaintiff's marijuana use was not error.  Dr. Dean stated that if Plaintiff used more marijuana than she reported to Dr. Dean, it could negatively impact her mood and motivation.  Tr. 633.  One of the four reasons Dr. Dean cited in support of her statement that Plaintiff 's ability to find and participate in employment is likely "quite limited," was Plaintiff's low level of motivation.  Id. Clearly, to Dr. Dean, there is a relationship between marijuana use and motivation, and the lack of motivation impacts Plaintiff's employability.  The ALJ found that Plaintiff had a lack of candor regarding her substance abuse.  Tr. 24.  He noted that at the hearing, she testified that she

does not use marijuana frequently, but she also said she had used it last only two weeks ago.  Tr. 47.  And, in 2013, she reported to her medical provider that she was using it one to two times per week.  Tr. 1601.  Because the record reasonably supported a finding that Plaintiff used marijuana more than she reported to Dr. Dean and because Dr. Dean stated that increased use could impact at least one of the factors leading to Plaintiff's employability, the ALJ did not err in relying on the marijuana use as one reason to discount Dr. Dean's opinion.

The ALJ did not err in giving little or no weight to Dr. Dean's December 2011 evaluation and opinion which were based on non-credible subjective reports by Plaintiff or non-probative out-of-date testing, or were not indicative of disability.  And, Dr. Dean's employability opinion was based in part on a lack of motivation which was influenced by Plaintiff's marijuana use.  These are specific and legitimate reasons supported by substantial evidence in the record.

CONCLUSION

The Commissioner's decision is affirmed.

IT IS SO ORDERED.

Dated this ___13___ day of ___June___, 2016

Marco A. Hernandez
United States District Judge

17 - OPINION & ORDER